UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| R. L. HOLMES,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-501 |
| | ) | |
| FRANK J. BISIGNANO,[2] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of a decision of the

Commissioner of Social Security, filed by the plaintiff, R. L. Holmes, on June 9, 2025. For the

following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, R. L. Holmes ("Holmes"), filed an application for Title II benefits on

August 8, 2022, alleging a disability onset date in January 2019. [DE 11]. The Social Security

Administration ("SSA") initially denied Holmes's claims on December 6, 2022 and on

reconsideration on August 16, 2023. (Tr. 104-15, 117-24). Following a hearing, Administrative

Law Judge ("ALJ") Leeanne Foster issued an unfavorable decision on June 17, 2024. (Tr. 33-

45). The Appeals Council denied Holmes's request for review on April 14, 2025, making the

ALJ's decision the final decision of the Commissioner. (DE 11).

At step one of the five-step sequential analysis for determining whether an individual is

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Frank Bisignano was confirmed as Commissioner on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

disabled, as defined in the Social Security Act, the ALJ found that Holmes did not engage in substantial gainful activity since January 1, 2019. (Tr. 36).

At step two, the ALJ determined that Holmes had the severe impairments of right knee degenerative joint disease, diabetes mellitus, and obesity. (Tr. 37).

At step three, the ALJ concluded that Holmes did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 38-39).

Following step three, the ALJ then assessed Holmes's residual functional capacity (RFC), holding as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds but she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is limited to frequent handling and fingering with the bilateral upper extremities.

(Tr. 39).

At step four, the ALJ found that Holmes was capable of performing past relevant work as a childcare monitor. (Tr. 43-44).

At step five, the ALJ relied on vocational testimony and found that Holmes could work as a childcare monitor. (Tr. 44). The ALJ asked the vocational expert a hypothetical that incorporated the residual functional capacity outlined above, and the "expert testified that the hypothetical individual would be able to perform the past relevant work mentioned above (childcare monitor), despite the additional limitations noted in the current residual functional capacity as the claimant performed the foregoing at the sedentary exertional level, as defined in the Dictionary of Occupational Titles ("DOT")." *Id.*

Consequently, the ALJ found that Holmes had not been under a disability from January 1,

2019 through June 17, 2024, as defined in the Social Security Act. (Tr. 45).

### *Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Lothridge v. Saul*, 984 F.3d 1227, 1232 (7th Cir. 2021); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); *Swiecichowski v. Dudek*, 113 F.4th 751, 756 (7th Cir. 2025); *Rabdeau v. Bisignano*, 155 F.4th 908, 912 (7th Cir. 2025) (quoting *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022)); *Lincoln v. Bisignano*, 2026 WL 1097727 at *2 (7th Cir. Apr. 23, 2026). A reviewing court does not "reweigh the evidence or substitute [its] own judgment for that of the ALJ." *Moore*, 743 F.3d at 1121. Instead, the court's role is to "examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions." *Id.*; *Lothridge*, 984 F.3d at 1233. To warrant reversal, the burden is on the claimant to "point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social

Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §§ 404.1520, 416.920. The ALJ first considers whether the claimant is employed and "doing . . . substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. § 401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). That said, if the claimant shows that her impairment is so severe that she cannot engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, considering her age, education, job experience, and functional capacity to work, is able to perform other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Biestek v. Berryhill*, 587 U.S. 97, 107–08 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying his opinion about job availability does not categorically preclude the expert's testimony from counting as "substantial evidence"

but, instead, the inquiry is case-by-case).

Holmes has requested that the court remand this matter for additional proceedings. In her appeal, she challenges the ALJ's compliance with evaluating Dr. Stephen Parker, M.D.'s consultative opinion and the ALJ's failure to adopt any consultative opinion, allegedly failing to create a logical bridge.

**1. Substantial Evidence Supports the ALJ's Decision and the ALJ Sufficiently Addressed Opinion of Consultative Examiner Dr. Parker**

Since the RFC finding must account for all of a claimant's physical and mental limitations, an ALJ's failure to fully consider even non-severe limitations within the RFC finding warrants remand and reversal. *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). This is because an RFC finding which does not account for all of a claimant's limitations is not supported by substantial evidence. *Lothridge v. Saul*, 984 F.3d 1227, 1232-33 (7th Cir. 2021).

The RFC stated that Holmes could perform sedentary work with additional limitations. (Tr. 39). In making that determination, the ALJ discussed Holmes's symptoms and medical record. *Id.* Holmes argues that the ALJ did not adequately consider Dr. Stephen Parker's evaluation. [DE 11]. Specifically, Holmes notes Dr. Parker observed that Holmes could not squat below 90 degrees, walk on her heels a short distance, had antalgia, and favored her left side. Dr. Parker further documented that Holmes's cardiac state was tachycardic, and her blood pressure was "dangerously high at the time of the visit." (Tr. 404; Tr. 412). The court finds this commentary on Dr. Parker's evaluation of Holmes's blood pressure to be disingenuous. Dr. Parker offered to provide consultation on Holmes's blood pressure, but Holmes declined and rushed out of the office. (Tr. 412). Holmes also argues that Dr. Parker opined that she could not

stand/walk for at least two hours of an eight-hour day. (Tr. 412).

The ALJ specifically limited Holmes's RFC such that she would not be consistently ambulating around an office or workspace; the ALJ prescribed sedentary work that may require brief periods of walking and standing. (Tr. 39); 20 C.F.R. 404.1567(a), 416.867(a). The ALJ discussed Dr. Gatzimos's appointments with Holmes and subsequent notation at length. (Tr. 41-42). Dr. Gatzimos, Holmes's primary care physician, documented that she appeared "'healthy' and in no acute painful distress." (Tr. 42). Dr. Gatzimos noted that Holmes did not use an ambulatory aid and, though deconditioned, could perform the leg-raise test. (Tr. 41).

As for the ALJ's assessment of Dr. Parker's and the other consultative evaluations, the ALJ grappled with the whole record and found disparities in the evaluations. (Tr. 43). The ALJ specifically identified where certain observations contradicted the record and Holmes's treatment history, such as an omission of left lower extremity complaints and a lack of respiratory limitations. *Id.* With respect to Dr. Parker's assessment, the ALJ pointed to contradictory evidence located elsewhere in Holmes's treatment notes.

An ALJ is free to determine that a claimant's alleged impairments are not supported by the medical and nonmedical evidence. 20 C.F.R. § 416.920c(b)(2), (c)(1)-(2) (regulatory factors of supportability and consistency are the most important factors ALJs consider when determining persuasiveness of prior administrative medical findings). An ALJ must consider all medical opinions and, even though the ALJ is not required to address each piece of evidence, a logical bridge between the evidence and conclusions is necessary. 20 C.F.R. § 404.1527(b,c); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Rabdeau*, 155 F.4th at 913 (quoting *Denton*, 596 F.3d at 425).

The ALJ did not specifically assess Dr. Parker's statement about Holmes's potential

tachycardia. (Tr. 404). However, the ALJ found no other notation of accelerated heart rate in

Holmes's record.

> Concerning the claimant's blood pressure and/or iron deficits, while the records reflected references to these diagnoses, the longitudinal record prior to April 19, 2022 documented no chronic headache issues, shortness of breath, or cardiac complications such as a heart attack/stroke, aneurysms, heart failure, vision limitations, kidney complications, or cognitive decline attributable to blood pressure abnormalities or iron deficits (Exhibits 1F, 3F, 4F). Moreover, the claimant's heart rate and rhythm were regular, and she denied cardiac related symptomatology; thus, the undersigned was not persuaded that these impairments significantly limited the claimant's ability to perform basic work activities. Therefore, for the purposes of this decision, the aforementioned were found "non-severe."

(Tr. 36-37). The ALJ noted that Dr. Parker's conclusions contradicted the record as a whole. She

addressed some of Dr. Parker's concerns and found that they were inconsistent with the

evidence, which meets the requisite standard for an ALJ's evaluation as "sufficient to allow us,

as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the

appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir.

2023) (quoting *Moore*, 743 F.3d at 1121).

   2. **Not Adopting any Consultative Evaluation does not Create an Evidentiary Deficit**

   Holmes argues that the ALJ refused to accept any consultative examiner's opinion creates

a de facto void of evidence. [DE 11]. Holmes fails to acknowledge that the ALJ discussed her

reasons for disagreeing with the examiners' opinions and also credited the primary care

physician. (Tr. 43). Just because Holmes disagrees with the ALJ's evaluation does not mean that

she is entitled to a remand. Mislabeling the ALJ's disagreement for "cherry-picking" is

inaccurate.

   This court does not have jurisdiction to reweigh evidence that the ALJ considered.

*Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000) ("this Court may not decide the facts

anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled") (citing *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)). An ALJ is not required to discuss every piece of evidence in the record so long as the ALJ's conclusion is supported by substantial evidence. *Warnell*, 97 F.4th at 1053-54 (7th Cir. 2023).

Here, the ALJ did not cherry-pick evidence. Even if she did, the evidence she disagreed with was not dispositive as to whether Holmes has a disability. An antalgic gait and one documented instance of high blood pressure do not, without more, support a finding of disability. There is no other evidence in the record--and Holmes points to no other evidence--that substantiates Dr. Parker's standing restriction or description of Holmes's cardiac state. "The ALJ did what the ALJs must do: [she] considered all evidence and weighed it." *Bishop v. Comm'r of Soc. Sec.*, No. 3:24-cv-271-JD, 2025 WL 953503, at *3 (N.D. Ind. Mar. 31, 2025). Holmes has not demonstrated that the ALJ rejected Dr. Parker's opinion without relying upon the evidentiary record. *Back v. Barnhart*, 63 F. App'x 254, 259 (7th Cir. 2003).

Holmes cites cases where the ALJ completely disregarded treating physician opinions,[3] failed to articulate contradictory evidence,[4] and dismissed all medical opinions without recruiting any additional experts.[5] Each cited case is distinguishable because the ALJ in this case found Holmes's treating physician's opinion persuasive, articulated what evidence contradicted testimony, and was not required to call additional doctors.

---

[3] *Artur P. L. v. Comm'r of Soc. Sec.*, 3:23-CV-111-MGG, 2024 WL 1252272, at *4 (N.D. Ind. Mar. 22, 2024).
[4] *Tammy M. v. Saul*, 2:20-CV-285, 2021 WL 2451907, at *8 (N.D. Ind. June 16, 2021).
[5] *Stephanie Z. v. Kijakazi*, 2023 WL 2572429, at *4 (N.D. Ill. Mar. 20, 2023).

*Conclusion*

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.


ENTERED this 25th day of June, 2026.

/s/ Andrew P. Rodovich
United States Magistrate Judge